**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                   :   Chapter 11
                       :

MARK IV INDUSTRIES, INC., et al.,  :   Case No. 09-12795 (SMB)
                       :

                       :   (Jointly Administered)

               Debtors.  :
- - - - - - - - - - - - - - - - - - - - - - - - - x

### JOINT PLAN OF REORGANIZATION OF MARK IV INDUSTRIES, INC.
### AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

J. Eric Ivester
Matthew M. Murphy
SKADDEN ARPS SLATE MEAGHER
    & FLOM LLP
155 N. Wacker Drive, Suite 2700
Chicago, Illinois  60606-1720
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

Jay M. Goffman
SKADDEN ARPS SLATE MEAGHER
    & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Debtors and Debtors-in-Possession

Dated:  June 17, 2009

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ................................................................................ 3

A.    Scope of Definitions ............................................................................. 3

B.    Definitions ............................................................................................ 3

    1.1    "Administrative Claim" ........................................................... 3

    1.2    "Affiliates" .............................................................................. 3

    1.3    "Allowed Claim" ..................................................................... 3

    1.4    "Allowed Class __ Claim" ...................................................... 4

    1.5    "Avoidance Claims" ................................................................ 4

    1.6    "Ballot" .................................................................................... 4

    1.7    "Bankruptcy Code" .................................................................. 4

    1.8    "Bankruptcy Court" ................................................................. 4

    1.9    "Bankruptcy Rules" ................................................................. 4

    1.10   "Business Day" ........................................................................ 4

    1.11   "Cash" ...................................................................................... 4

    1.12   "Causes of Action" .................................................................. 5

    1.13   "Chapter 11 Case(s)" ............................................................... 5

    1.14   "Claim" .................................................................................... 5

    1.15   "Claimholder" .......................................................................... 5

    1.16   "Claims Administration" ......................................................... 5

    1.17   "Claims Agent" ........................................................................ 5

    1.18   "Claims Objection Deadline" .................................................. 5

    1.19   "Class" ..................................................................................... 5

    1.20   "Confirmation Date" ................................................................ 5

    1.21   "Confirmation Hearing" .......................................................... 5

    1.22   "Confirmation Order" .............................................................. 5

    1.23   "Convenience Class Election" ................................................. 6

    1.24   "Creditors' Committee" ........................................................... 6

    1.25   "Cure" ...................................................................................... 6

    1.26   "Debtors" .................................................................................. 6

    1.27   "Deferred Commitment Fee" ................................................... 6

    1.28   "Deferred Commitment Fee Claims" ....................................... 6

    1.29   "Deficiency Claims" ................................................................ 6

    1.30   "D&O Insurance" ..................................................................... 6

    1.31   "DIP Agent" ............................................................................. 6

    1.32   "DIP Facility" .......................................................................... 6

    1.33   "DIP Facility Claims" .............................................................. 7

    1.34   "DIP Facility Order" ................................................................ 7

    1.35   "DIP Lenders" .......................................................................... 7

    1.36   "Disallowed Claim" ................................................................. 7

    1.37   "Disbursing Agent" ................................................................. 7

1.38 &ldquo;Disclosure Statement&rdquo; ................................................................7
1.39 &ldquo;Disputed Claim&rdquo; ...........................................................................7
1.40 &ldquo;Distribution Date&rdquo; .......................................................................7
1.41 &ldquo;Effective Date&rdquo; ............................................................................8
1.42 &ldquo;Estates&rdquo; ........................................................................................8
1.43 &ldquo;Executive Employment Agreements&rdquo; ........................................8
1.44 &ldquo;Exhibit&rdquo; .........................................................................................8
1.45 &ldquo;Exhibit Filing Date&rdquo; ...................................................................8
1.46 &ldquo;Existing Securities&rdquo; ...................................................................8
1.47 &ldquo;Exit Facility&rdquo; ...............................................................................8
1.48 &ldquo;Exit Facility Documents&rdquo; ..........................................................8
1.49 &ldquo;Exit Facility Lenders&rdquo; ...............................................................8
1.50 &ldquo;Face Amount&rdquo; ..............................................................................8
1.51 &ldquo;Final Order&rdquo; .................................................................................9
1.52 &ldquo;First Lien Agent&rdquo; .........................................................................9
1.53 &ldquo;First Lien Credit Agreement&rdquo; ....................................................9
1.54 &ldquo;First Lien Lenders&rdquo; .....................................................................9
1.55 &ldquo;First Lien Lender Claims&rdquo; ..........................................................9
1.56 &ldquo;First Lien Lender Deficiency Claim&rdquo; .......................................9
1.57 &ldquo;First Lien Lenders Plan Distribution Property&rdquo; ......................9
1.58 &ldquo;First Lien Lender Secured Claims&rdquo; ..........................................9
1.59 &ldquo;General Unsecured Claim&rdquo; .......................................................10
1.60 &ldquo;General Unsecured Claimholders Plan Distribution
Property&rdquo; ................................................................................................10
1.61 &ldquo;General Unsecured Convenience Claim&rdquo; ................................10
1.62 &ldquo;Holdback Amount&rdquo; ...................................................................10
1.63 &ldquo;Holdback Escrow Account&rdquo; ......................................................10
1.64 &ldquo;Holder&rdquo; ........................................................................................10
1.65 &ldquo;Impaired&rdquo; ....................................................................................10
1.66 &ldquo;Indemnification Rights&rdquo; ............................................................10
1.67 &ldquo;Indemnitee&rdquo; .................................................................................11
1.68 &ldquo;Insurance Coverage&rdquo; .................................................................11
1.69 &ldquo;Insured Claim&rdquo; ...........................................................................11
1.70 &ldquo;Intercompany Claim&rdquo; .................................................................11
1.71 &ldquo;Interest&rdquo; .......................................................................................11
1.72 &ldquo;Interestholder&rdquo; ............................................................................11
1.73 &ldquo;KEIP&rdquo; ..........................................................................................11
1.74 &ldquo;Legacy Liabilities&rdquo; ....................................................................11
1.75 &ldquo;Lien&rdquo; ............................................................................................11
1.76 &ldquo;Management Equity Incentive Program&rdquo; ...............................11
1.77 &ldquo;Mark IV&rdquo; .....................................................................................12
1.78 &ldquo;Mark IV Non-Debtor&rdquo; ................................................................12
1.79 &ldquo;New Common Stock&rdquo; .................................................................12
1.80 &ldquo;Old Common Stock&rdquo; .................................................................12

1.81 "Old Equity Interests"................................................12
1.82 "Organizational Documents"......................................12
1.83 "Other Deficiency Claim".........................................12
1.84 "Other Priority Claim".............................................12
1.85 "Other Secured Claim" ...........................................12
1.86 "Periodic Distribution Date"....................................13
1.87 "Permitted Nominee"..............................................13
1.88 "Person".................................................................13
1.89 "Petition Date" .......................................................13
1.90 "Plan"....................................................................13
1.91 "Priority Claim" ......................................................13
1.92 "Priority Tax Claim" ...............................................13
1.93 "Pro Rata" .............................................................14
1.94 "Professional".........................................................14
1.95 "Professional Claim" ..............................................14
1.96 "Professional Fee Order".........................................14
1.97 "Registration Rights Agreement" ............................14
1.98 "Reinstated" or "Reinstatement" ...........................14
1.99 "Released Parties"...................................................14
1.100 "Reorganized . . ."..................................................15
1.101 "Reorganized Debtors".............................................15
1.102 "Reorganized Debtors' Credit Facilities" ................15
1.103 "Restructured Debt Term Loans" ............................15
1.104 "Restructured Debt Term Loan Agreement" ...........15
1.105 "Restructured Debt Term Loan Agreement Documents".........15
1.106 "Restructuring Transaction(s)" ...............................15
1.107 "Restructuring Transactions Notice" .......................15
1.108 "Retained Actions" .................................................15
1.109 "Scheduled" ...........................................................16
1.110 "Schedules".............................................................16
1.111 "Second Lien Agent"................................................16
1.112 "Second Lien Credit Agreement" ............................16
1.113 "Second Lien Lender Claims" ..................................16
1.114 "Secured Tax Claim" ...............................................16
1.115 "Security".................................................................16
1.116 "Stockholders' Agreement".....................................16
1.117 "Subsidiary Debtors"................................................16
1.118 "Subsidiary Interests"...............................................16
1.119 "Unimpaired"...........................................................17
1.120 "Voting Deadline" ...................................................17
C. Rules of Interpretation ......................................................17
D. Computation of Time ........................................................17
E. Exhibits ..............................................................................17

ARTICLE II ADMINISTRATIVE EXPENSES AND PRIORITY TAX
CLAIMS .................................................................................................18
    2.1    Administrative Claims ............................................................18
    2.2    Priority Tax Claims................................................................18
ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ........................19
    3.1    Introduction............................................................................19
    3.2    Unimpaired Classes of Claims and Interests ...........................19
    3.3    Impaired Classes of Claims and Interests ................................20
    3.4    Impaired Classes of Claims and Interests ................................20
ARTICLE IV PROVISIONS FOR TREATMENT OF CLAIMS AND
INTERESTS ...........................................................................................20
    4.1    Treatment of Claims Against and Interests In the
          Debtors...................................................................................20
    4.2    Reservation of Rights.............................................................24
ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE IMPAIRED CLASSES OF
CLAIMS OR INTERESTS.......................................................................24
    5.1    Impaired Classes of Claims Entitled to Vote...........................24
    5.2    Classes Deemed to Accept Plan..............................................24
    5.3    Acceptance by Impaired Classes ............................................24
    5.4    Classes Deemed to Reject Plan...............................................24
    5.5    Confirmation Pursuant to Section 1129(b) of the
          Bankruptcy Code ...................................................................25
    5.6    Confirmability and Severability of a Plan ...............................25
ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN.........................25
    6.1    Continued Corporate Existence ..............................................25
    6.2    Corporate Action....................................................................25
    6.3    Certificate of Incorporation and Bylaws..................................25
    6.4    Cancellation of Existing Securities and Agreements................26
    6.5    Authorization and Issuance of New Common Stock................26
    6.6    Directors and Officers.............................................................27
    6.7    Employment, Retirement, Indemnification and Other
          Agreements and Incentive Compensation Programs.................27
    6.8    Implementation of the Management Equity Incentive
          Program.................................................................................29
    6.9    Issuance of the New Common Stock .......................................29
    6.10   The Exit Facility ....................................................................29
    6.11   The Restructured Debt Term Loan Agreement ........................29
    6.12   Restructuring Transactions and Alternative Structures ............30
    6.13   Preservation of Causes of Action............................................31
    6.14   Exclusivity Period ..................................................................31
    6.15   Effectuating Documents; Further Transactions .......................31
    6.16   Exemption From Certain Transfer Taxes and Recording
          Fees .......................................................................................32

ARTICLE VII UNEXPIRED LEASES AND EXECUTORY CONTRACTS ............32
    7.1    Assumed Contracts and Leases..............................................32
    7.2    Rejected Contracts and Leases................................................33
    7.3    Exhibits Not Admissions ........................................................33
    7.4    Payments Related to Assumption of Executory
          Contracts and Unexpired Leases.............................................33
    7.5    Rejection Damages Bar Date ..................................................33
ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS .............................34
    8.1    Time of Distributions..............................................................34
    8.2    No Interest on Claims .............................................................34
    8.3    Disbursing Agent ....................................................................34
    8.4    Claims Administration Responsibility....................................34
    8.5    Delivery of Distributions .......................................................34
    8.6    Procedures for Treating and Resolving Disputed and
          Contingent Claims .................................................................35
ARTICLE IX ALLOWANCE AND PAYMENT OF CERTAIN
    ADMINISTRATIVE CLAIMS ...............................................................36
    9.1    DIP Facility Claims.................................................................36
    9.2    Deferred Commitment Fee Claims .........................................36
    9.3    Professional Claims ................................................................36
    9.4    Substantial Contribution Compensation and Expenses
          Bar Date .................................................................................37
    9.5    Other Administrative Claims ..................................................37
ARTICLE X EFFECT OF THE PLAN ON CLAIMS AND INTERESTS .................37
    10.1    Revesting of Assets.................................................................37
    10.2    Discharge of the Debtors ........................................................37
    10.3    Compromises and Settlements................................................38
    10.4    Release of Certain Parties .......................................................39
    10.5    Releases by Holders of Claims ...............................................39
    10.6    Setoffs ....................................................................................39
    10.7    Exculpation and Limitation of Liability .................................40
    10.8    Indemnification Obligations ...................................................40
    10.9    Injunction ...............................................................................41
ARTICLE XI CONDITIONS PRECEDENT ...........................................................41
    11.1    Conditions to Confirmation ....................................................41
    11.2    Conditions to Consummation .................................................41
    11.3    Waiver of Conditions to Confirmation or
          Consummation .......................................................................42
ARTICLE XII RETENTION OF JURISDICTION ..................................................42
ARTICLE XIII MISCELLANEOUS PROVISIONS.................................................44
    13.1    Binding Effect.........................................................................44
    13.2    Modification and Amendments...............................................44
    13.3    Withholding and Reporting Requirements ..............................44

13.4 Allocation of Plan Distributions Between Principal and Interest..................................................................................45

13.5 Creditors' Committee.............................................................45

13.6 Payment of Statutory Fees .....................................................45

13.7 Revocation, Withdrawal, or Non-Consummation ...................45

13.8 Notices ..................................................................................45

13.9 Term of Injunctions or Stays..................................................46

13.10 Governing Law .....................................................................47

13.11 Waiver and Estoppel ..............................................................47

# EXHIBITS

| | |
|---|---|
| Exhibit A | Schedule of Shares of New Common Stock Available for Distribution to be Distributed to Holders of Allowed General Unsecured Claims of each Debtor |
| Exhibit B | Summary Description of the Terms of the Exit Facility |
| Exhibit C | Summary Description of the Terms of the Management Equity Incentive Plan |
| Exhibit D | Summary Description of the Terms of the New Common Stock |
| Exhibit E | Form of the Registration Rights Agreement |
| Exhibit F | Summary Description of the Terms of the Restructuring Transactions |
| Exhibit G | Form of Stockholders' Agreement |
| Exhibit H | Form of Certificate of Incorporation |
| Exhibit I | Form of Bylaws |
| Exhibit J | Summary Description of the Terms of Employment of Certain Key Executives |
| Exhibit K | Form of the Terms of the Restructured Debt Term Loan Agreement |
| Exhibit L | Nonexclusive List of Retained Actions and Avoidance Claims |
| Exhibit M | Schedule of Unexpired Leases and Executory Contracts to be Rejected Pursuant to the Plan |

**INTRODUCTION**

Mark IV Industries, Inc. ("Mark IV") and seventeen of its direct and indirect subsidiaries and affiliates, debtors and debtors-in-possession (collectively, the "Debtors," and together with their non-Debtor subsidiaries and affiliates (the "Company") in the above-captioned jointly-administered chapter 11 reorganization cases, hereby propose the following joint reorganization plan for the resolution of outstanding creditor claims against, and equity interests in, the Debtors. None of Mark IV's subsidiaries and affiliates located outside of the United States are chapter 11 Debtors. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties, results of operations, projections for future operations, risk factors, and a summary and analysis of this Plan and certain related matters, including distributions to be made under this Plan. Each Debtor is a proponent of the plan contained herein within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used but not defined in this Introduction have the meanings ascribed to them in Article I of this Plan. The Debtors who are proponents of this Plan, their chapter 11 case numbers, and their jurisdictions of incorporation or formation are as follows:

| Debtors (state of formation or incorporation) | Bankruptcy Case No. |
|---|---|
| Luminator Service Inc. (New York) | Case No. 09-12793 (SMB) |
| Mark IV Industries, Inc. (Delaware) | Case No. 09-12795 (SMB) |
| Aerospace Sub, Inc. (Delaware) | Case No. 09-12798 (SMB) |
| Armtek International Holding Company, Inc. (Delaware) | Case No. 09-12800 (SMB) |
| Automatic Signal/Eagle Signal Corp. (Delaware) | Case No. 09-12802 (SMB) |
| Dayco Products, LLC (Delaware) | Case No. 09-12803 (SMB) |
| F-P Displays, Inc. (Massachusetts) | Case No. 09-12804 (SMB) |
| F-P Technologies Holding Corp. (Delaware) | Case No. 09-12805 (SMB) |
| Former Fuel Systems, Inc. (Delaware) | Case No. 09-12806 (SMB) |
| Luminator Holding L.P. (Delaware) | Case No. 09-12807 (SMB) |

| Mark IV Holdings, LLC (Delaware) | Case No. 09-12808 (SMB) |
| Mark IV Invesco, LLC (Delaware) | Case No. 09-12809 (SMB) |
| Mark IV IVHS Holding Corp. (Delaware) | Case No. 09-12811 (SMB) |
| Mark IV Pay Agent, Inc. (Delaware) | Case No. 09-12812 (SMB) |
| Mark IV Transportation Technologies Holding Corp. (Delaware) | Case No. 09-12813 (SMB) |
| NRD, LLC (Delaware) | Case No. 09-12814 (SMB) |
| Seebreeze Wireless Holdings, L.P. (Delaware) | Case No. 09-12815 (SMB) |
| Woods Liquidating Corporation (Delaware) | Case No. 09-12816 (SMB) |

This Plan contemplates the reorganization of each of the Debtors upon consummation of this Plan and the resolution of the outstanding Claims against and Interests in the Debtors pursuant to sections 1123, 1129 and 1141 of the Bankruptcy Code. This Plan provides that Holders of First Lien Lender Secured Claims will receive a distribution consisting of such Claimholders' Pro Rata participation in the Restructured Debt Term Loan Agreement and Pro Rata Share of 92% of the New Common Stock (prior to dilution from the Management Equity Incentive Program), and Holders of Allowed General Unsecured Claims will receive such Claimholders' Pro Rata Share of 8% of the New Common Stock (prior to dilution from the Management Equity Incentive Program), with the number of shares New Common Stock available to be distributed to Holders of Allowed General Unsecured Claims of each Debtor as set forth on Exhibit A. Holders of General Unsecured Convenience Claims will receive a distribution consisting of Cash in an amount equal to the lesser of (a) [•]% of such Allowed General Unsecured Convenience Claim, or (b) such Claimholders' Pro Rata share of $[•]. Furthermore, the Existing Securities of the Debtors will be cancelled on the Effective Date of this Plan and Holders of the Existing Securities will not receive distributions under this Plan.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan may not be solicited from a Claimholder or Interestholder until the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders and Interestholders. ALL CLAIMHOLDERS WHO ARE ELIGIBLE TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article XIII of this Plan, the Debtors expressly reserve their right to alter, amend, modify, revoke or withdraw this Plan, one or more times, before this Plan's substantial consummation.

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A.  Scope of Definitions

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

### B.  Definitions

**1.1**  **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, DIP Facility Claims, the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, Professional Claims, and all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

**1.2**  **"Affiliates"** shall have the meaning ascribed to such term by section 101(2) of the Bankruptcy Code.

**1.3**  **"Allowed Claim"** means a Claim or any portion thereof, (a) that has been allowed by a Final Order of the Bankruptcy Court (or such other court as a Reorganized Debtor and the Holder of such Claim agree may adjudicate such Claim and objections thereto), or (b) which (i) is not the subject of a proof of claim timely

filed with the Bankruptcy Court but (ii) is Scheduled as liquidated and noncontingent, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, but only to the extent such Claim is Scheduled as liquidated and noncontingent or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in this Plan.

1.4 **"Allowed Class __ Claim"** means an Allowed Claim in the specified Class.

1.5 **"Avoidance Claims"** means Causes of Action of the Debtors and their Estates arising under any of sections 544, 545, 547, 548, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

1.6 **"Ballot"** means each ballot form distributed with the Disclosure Statement to Claimholders who are included in Classes that are Impaired under the Plan and entitled to vote under <u>Article V</u> herein to accept or reject this Plan.

1.7 **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the date hereof but, with respect to amendments to the Bankruptcy Code subsequent to commencement of the Chapter 11 Cases, only to the extent that such amendments were made expressly applicable to bankruptcy cases which were filed as of the enactment of such amendments.

1.8 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York.

1.9 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.10 **"Business Day"** means any day, excluding Saturdays, Sundays and legal holidays, on which commercial banks are open for business in New York City.

1.11 **"Cash"** means legal tender of the United States or equivalents thereof.

**1.12** **"Causes of Action"** means any and all actions, claims, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person for failure to pay for products or services provided or rendered by the Debtors, all claims, suits or proceedings relating to enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' or the Reorganized Debtors' businesses.

**1.13** **"Chapter 11 Case(s)"** means the chapter 11 case(s) of the Debtor(s) pending in the Bankruptcy Court.

**1.14** **"Claim"** means a claim against the Debtors (all or any of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.15** **"Claimholder"** means a Holder of a Claim.

**1.16** **"Claims Administration"** shall have the meaning ascribed to it in Section 8.4 hereof.

**1.17** **"Claims Agent"** means Epiq Bankruptcy Solutions, LLC.

**1.18** **"Claims Objection Deadline"** means that day which is one hundred eighty (180) days after the Effective Date, as the same may be from time to time extended by the Bankruptcy Court without further notice to parties-in-interest.

**1.19** **"Class"** means a category of Claimholders or Interestholders described in Article IV of this Plan.

**1.20** **"Confirmation Date"** means the date of entry of the Confirmation Order.

**1.21** **"Confirmation Hearing"** means the hearing before the Bankruptcy Court on confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.22** **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming this Plan.

**1.23** **"Convenience Class Election"** means the election pursuant to which the Holder of a qualifying General Unsecured Claim against the Debtors timely elects to be treated as a General Unsecured Convenience Claim.

**1.24** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

**1.25** **"Cure"** means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.26** **"Debtors"** has the meaning ascribed to it in the Introduction hereof.

**1.27** **"Deferred Commitment Fee"** means, with respect to each DIP Lender, the deferred commitment fee earned by such DIP Lender as more fully described in the DIP Facility.

**1.28** **"Deferred Commitment Fee Claims"** means all Claims of the DIP Lenders on account of such DIP Lenders' Deferred Commitment Fees arising under or pursuant to the DIP Facility.

**1.29** **"Deficiency Claims"** mean the First Lien Lender Deficiency Claims, the Second Lien Claims and the Other Deficiency Claims.

**1.30** **"D&O Insurance"** means insurance maintained by the Debtors which covers, among others, the directors, officers and managing members of the Debtors or any of them.

**1.31** **"DIP Agent"** means JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders under the DIP Facility.

**1.32** **"DIP Facility"** means the $90,000,000 Credit and Guarantee Agreement, dated as of May 4, 2009, among Mark IV, as Guarantor, Dayco Products, LLC, as U.S. Borrower, Dayco Europe S.r.l., as Italian Borrower, Mark IV Industries

Corp., as Canadian Borrower, the other U.S. Guarantors named therein, and the DIP Agent and the DIP Lenders, as the same may be amended, supplemented, or otherwise modified from time to time.

**1.33** **"DIP Facility Claims"** means all Administrative Claims of the DIP Agent and the DIP Lenders arising under or pursuant to or related to the DIP Facility.

**1.34** **"DIP Facility Order"** means, collectively, the Final Order that was entered by the Bankruptcy Court on May 27, 2009, authorizing and approving the DIP Facility and the agreements related thereto, and any further Final Orders entered by the Bankruptcy Court approving any amendment or extension of the DIP Facility.

**1.35** **"DIP Lenders"** means the lenders from time to time party to the DIP Facility.

**1.36** **"Disallowed Claim"** means a Claim or any portion thereof, that (a) has been disallowed by a Final Order of the Bankruptcy Court, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or (c) is not Scheduled and as to which a proof of claim bar date has been set but no proof of claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

**1.37** **"Disbursing Agent"** means the Reorganized Debtors or any Person designated by the Reorganized Debtors (and who accepts such designation) to serve as a disbursing agent under Article VIII of this Plan.

**1.38** **"Disclosure Statement"** means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 on [•], 2009, as such disclosure statement may be amended, modified or supplemented from time to time.

**1.39** **"Disputed Claim"** means a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim and includes, without limitation, Claims that (a) (i) have not been Scheduled by the Debtors (or any of them) or have been Scheduled at zero or as unknown, contingent, unliquidated or disputed, and (ii) are not the subject of an objection filed in the Bankruptcy Court or as to which the time for filing an objection has not yet expired, (b) that are the subject of a proof of claim or interest that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the Bankruptcy Court, which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

**1.40** **"Distribution Date"** means the date upon which the initial distributions will be made to Holders of Allowed Claims pursuant to Article VIII of

this Plan, which shall be not more than twenty (20) Business Days after the Effective Date.

**1.41** **"Effective Date"** means the Business Day on which all conditions to the consummation of this Plan set forth in Section 11.2 hereof have been either satisfied or waived as provided in Section 11.3 hereof, and such Business Day shall be the day upon which this Plan is substantially consummated.

**1.42** **"Estates"** means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

**1.43** **"Executive Employment Agreements"** has the meaning ascribed to it in Section 6.7 hereof.

**1.44** **"Exhibit"** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.45** **"Exhibit Filing Date"** means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court.

**1.46** **"Existing Securities"** means, collectively, the Old Common Stock, and all options, warrants, rights and other instruments evidencing an ownership interest in any Debtor (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable or otherwise, to acquire any of the foregoing; provided that, Existing Securities shall not include Subsidiary Interests.

**1.47** **"Exit Facility"** means the credit facility providing financing to the Reorganized Debtors as of the Effective Date having substantially the terms set forth on Exhibit B.

**1.48** **"Exit Facility Documents"** has the meaning ascribed to it in Section 6.10 hereof.

**1.49** **"Exit Facility Lenders"** shall mean the financial institutions that have committed to provide the Exit Facility as of the Effective Date.

**1.50** **"Face Amount"** means, (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated liquidated amount claimed by the Claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise Allowed by any Final Order of the Bankruptcy Court and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.51** **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or leave to appeal (other than under Rule 60(b) of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024) has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**1.52** **"First Lien Agent"** means JPMorgan Chase Bank, N.A., as administrative agent for the First Lien Lenders under the First Lien Credit Agreement.

**1.53** **"First Lien Credit Agreement"** means that certain Amended and Restated Credit Agreement, dated as of June 21, 2004, among Mark IV Industries, Inc., Dayco Products, LLC, as U.S. borrower, Dayco Europe S.r.l., as Italian borrower, the First Lien Agent, and the First Lien Lenders from time to time parties thereto.

**1.54** **"First Lien Lenders"** mean all lenders under the First Lien Credit Agreement, or any such lender or its Affiliates in their capacity as party to any hedge or swap agreement to which any Debtor is a party.

**1.55** **"First Lien Lender Claims"** mean all Claims of the First Lien Agent and the First Lien Lenders arising under or pursuant to the First Lien Credit Agreement, including any Claims of any First Lien Lender or any Affiliate thereof arising under any hedge or swap agreement to which any Debtor is a party.

**1.56** **"First Lien Lender Deficiency Claim"** means $485 million, being the aggregate amount of First Lien Lender Claims in excess of the First Lien Lender Secured Claims after giving effect to the waiver under this Plan by the First Lien Lenders of $25 million of such First Lien Lender Deficiency Claims.

**1.57** **"First Lien Lenders Plan Distribution Property"** means, with respect to the First Lien Lender Secured Claims, (a) the Restructured Debt Term Loans deemed made on the Effective Date by the First Lien Lenders under the Restructured Debt Term Loan Agreement and (b) [•] shares of New Common Stock representing 92% of the New Common Stock (prior to dilution from the Management Equity Incentive Program).

**1.58** **"First Lien Lender Secured Claims"** mean the aggregate of the First Lien Lender Claims equal to $350 million, being the secured portion under section 506 of the Bankruptcy Code of the First Lien Lender Claims as fixed pursuant to, and for all purposes of, this Plan.

**1.59** **"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, a First Lien Lender Secured Claim, and a General Unsecured Convenience Claim; provided that, General Unsecured Claims shall include Deficiency Claims; provided further that, General Unsecured Claims shall not include a Claim that is disallowed or released, whether by operation of law or pursuant to a Final Order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

**1.60** **"General Unsecured Claimholders Plan Distribution Property"** means [•] shares of New Common Stock representing 8% of the New Common Stock (prior to dilution from the Management Equity Incentive Program) to be apportioned between the Classes of General Unsecured Claims in each of the Debtors' Chapter 11 Cases as is more specifically set forth at Exhibit A.

**1.61** **"General Unsecured Convenience Claim"** means a Claim against the Debtors that otherwise would be included in the General Unsecured Claim Class that is in an amount (a) of $[•] or less, or (b) greater than $[•] and the Holder of such Claim has made the Convenience Class Election on the Ballot provided for voting on the Plan within the time fixed by the Bankruptcy Court for completing and returning such Ballot to accept Cash in an amount equal to the lesser of (x) [•]% of any Allowed General Unsecured Convenience Claim, or (b) such Claimholders' Pro Rata share of $[•], all in full satisfaction, discharge and release of such Claim.

**1.62** **"Holdback Amount"** means the amount equal to 20% of fees billed to the Debtors in a given month that was retained by the Debtors as a holdback on payment of Professional Claims pursuant to the Professional Fee Order.

**1.63** **"Holdback Escrow Account"** means the escrow account established by the Disbursing Agent into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Claims to the extent not previously paid or disallowed.

**1.64** **"Holder"** means an entity holding a Claim or Interest.

**1.65** **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.66** **"Indemnification Rights"** means any obligations of the Debtors (or any of them) to indemnify, reimburse, advance or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to a Debtor's Organizational Documents, or pursuant to any applicable law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for or on behalf of the Debtors (or any of them).

**1.67** **"Indemnitee"** means all present and former directors, officers, employees, agents or representatives of the Debtors who provided services to the Debtors during the Chapter 11 Cases and who are entitled to assert Indemnification Rights.

**1.68** **"Insurance Coverage"** shall have the meaning ascribed to it in Section 10.8 hereof.

**1.69** **"Insured Claim"** means any Claim or portion of a Claim that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.70** **"Intercompany Claim"** means (a) a Claim by any Debtor against a Debtor; (b) a Claim by any Debtor against a Mark IV Non-Debtor; or (c) a Claim by any Mark IV Non-Debtor against a Debtor.

**1.71** **"Interest"** means (a) the legal, equitable contractual and other rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of any Person with respect to the Old Common Stock, or any other equity securities of the Debtors (or any of them) and (b) the legal, equitable, contractual and other rights, whether fixed or contingent, matured or unmatured, disputed or undisputed, of any Person to purchase, sell, subscribe to, or otherwise acquire or receive (directly or indirectly) any of the foregoing.

**1.72** **"Interestholder"** means a Holder of an Interest.

**1.73** **"KEIP"** means that certain Key Employee Incentive Plan adopted by Mark IV's board of directors and approved by a Final Order of the Bankruptcy Court on [•], 2009, as amended.

**1.74** **"Legacy Liabilities"** mean all post-employment benefits provided by the Debtors to former employees, including obligations stemming from Civil Action No. 1:02CV243 in the District Court of the United States for the Western District of North Carolina, Asheville Division, captioned Jerry Trull et al. v. Dayco Products, LLC.

**1.75** **"Lien"** means a lien, security interest or charge against or interest in property of the Debtors to secure payment of a debt or performance of an obligation owed by the Debtors. For purposes of this Plan, the term shall not include (a) a lien resulting from the provisions of Chapter 5 of the Bankruptcy Code or (b) a lien that has been or may be avoided pursuant to Chapter 5 of the Bankruptcy Code.

**1.76** **"Management Equity Incentive Program"** means that certain incentive plan to be implemented on or after the Effective Date as is more specifically described at Exhibit C attached hereto, by which the Reorganized Debtors shall

deliver certain stock options or restricted stock grants in Reorganized Mark IV to certain Mark IV post-Effective Date senior management and other employees.

**1.77** **"Mark IV"** has the meaning ascribed to it in the Introduction hereof.

**1.78** **"Mark IV Non-Debtor"** means a subsidiary or affiliate of Mark IV that is not a Debtor in these Chapter 11 Cases.

**1.79** **"New Common Stock"** means shares of common stock, $0.01 par value per share, of Reorganized Mark IV to be authorized and issued on or after the Effective Date. A summary description of the New Common Stock is set forth at <u>Exhibit D</u>.

**1.80** **"Old Common Stock"** means the shares of Mark IV's common stock that were authorized, issued and outstanding prior to the Effective Date.

**1.81** **"Old Equity Interests"** means the Interests in respect of the Old Common Stock issued and outstanding prior to the Effective Date, including treasury stock and all options, warrants, calls, rights, participation rights, puts, awards, commitments, or any other agreements of any character to acquire such common stock, and shall also include any Claim subordinated pursuant to section 510(b) arising from the rescission of a purchase or sale of any such common stock or rights relating to such common stock, or any Claim for damages arising from the purchase or sale of such common stock of Mark IV or any Claim for reimbursement, contribution, or indemnification arising from or relating to any such claims.

**1.82** **"Organizational Documents"** means the bylaws, articles of incorporation, corporate charters, certificates of formation, limited liability agreements, the Stockholders' Agreement or other documents or agreements that govern or affect the corporate formation and governance of the Debtors (or any of them) and the Reorganized Debtors (or any of the them), as the case may be.

**1.83** **"Other Deficiency Claim"** means, in the case of a Claimholder who asserts an Other Secured Claim against the Debtors, a Claim equal to the amount by which such Claim exceeds the secured portion thereof as determined pursuant to section 506 of the Bankruptcy Code.

**1.84** **"Other Priority Claim"** means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

**1.85** **"Other Secured Claim"** means a Claim (other than a DIP Claim, a Deferred Commitment Fee Claim, an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Priority Claim, an Intercompany Claim, a First Lien Lender Secured Claim, a General Unsecured Claim, and a General Unsecured

Convenience Claim) that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtors or the Reorganized Debtors and the Holder of such Claim.

**1.86** **"Periodic Distribution Date"** means (a) the Distribution Date, as to the first distribution made by the Reorganized Debtors, and (b) thereafter, (i) the first Business Day occurring ninety (90) days after the Distribution Date, (ii) subsequently, the first Business Day occurring ninety (90) days after the immediately preceding Periodic Distribution Date, or (iii) such other Business Day as the Reorganized Debtors may designate.

**1.87** **"Permitted Nominee"** means any nominee of a Prepetition Lender that such Prepetition Lender has confirmed in writing to the Debtors and the First Lien Agent (or the Second Lien Agent, as the case may be) that it is such Prepetition Lender's nominee for the purposes of distribution of some or all of such Prepetition Lender's Plan Distribution Property, provided that such nominee shall be an affiliate of such Prepetition Lender.

**1.88** **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

**1.89** **"Petition Date"** means the date on which each Debtor filed its voluntary petition commencing its Chapter 11 Case, that is April 30, 2009.

**1.90** **"Plan"** means this joint plan of reorganization, which is jointly proposed by the Debtors for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as such plan may be further amended from time to time in accordance with the Bankruptcy Code, Bankruptcy Rules and Section 13.2, and the exhibits hereto.

**1.91** **"Priority Claim"** means a Claim entitled to priority pursuant to section 507 of the Bankruptcy Code.

**1.92** **"Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.93** **"Pro Rata"** means, from time to time, unless this Plan specifically provides otherwise, with respect to Claims, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

**1.94** **"Professional"** means those Persons employed in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code, or otherwise.

**1.95** **"Professional Claim"** means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.96** **"Professional Fee Order"** means the order entered by the Bankruptcy Court on May 27, 2009, authorizing the interim payment of Professional Claims subject to the Holdback Amount.

**1.97** **"Registration Rights Agreement"** means the registration of rights agreement, a form of which is attached as <u>Exhibit E</u>, to which any party receiving New Common Stock shall automatically be deemed a party.

**1.98** **"Reinstated" or "Reinstatement"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Claimholder so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Claimholder to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claimholder for any damages incurred as a result of any reasonable reliance by such Claimholder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Claimholder; <u>provided</u>, <u>however</u>, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

**1.99** **"Released Parties"** means, collectively, (a) the Debtors, its officers, directors, and shareholders who were either serving in such capacities as of the Effective Date, or who had served in such capacities during the Chapter 11 Cases, (b) the Reorganized Debtors, (c) the officers, directors, and shareholders of the Reorganized Debtors serving in such capacity after the Effective Date, (d) the DIP

Agent and DIP Lenders, (e) the First Lien Lenders and the Second Lien Lenders, (f) the First Lien Agent and the Second Lien Agent, (g) the Exit Facility Lenders, (h) the Creditors' Committee, and each of its members in their capacity as such, and (i) with respect to each of the Persons named in (a) – (h) above, such Person's Affiliates, principals, employees, agents, officers, directors, financial advisors, accountants, attorneys and other professionals, and any of their successors and assigns, when acting in any of such capacities.

**1.100** **"Reorganized . . ."** means the applicable Debtor from and after the Effective Date.

**1.101** **"Reorganized Debtors"** means, collectively, all Debtors from and after the Effective Date.

**1.102** **"Reorganized Debtors' Credit Facilities"** means (a) the Exit Facility, and (b) the Restructured Debt Term Loan Agreement.

**1.103** **"Restructured Debt Term Loans"** mean the aggregate principal amount equal to $225 million of term loans deemed made to the applicable borrower on the Effective Date pursuant to the Restructured Debt Term Loan Agreement by the DIP Lenders (in satisfaction of the Deferred Commitment Fee Claims) and the First Lien Lenders (in partial satisfaction of the First Lien Lender Secured Claims).

**1.104** **"Restructured Debt Term Loan Agreement"** means the term loan agreement governing the Restructured Debt Term Loans, among Reorganized Dayco Products, LLC as borrower, Mark IV, JPMorgan Chase Bank, N.A., as administrative agent, the DIP Lenders (if applicable) with respect to the Deferred Commitment Fee and the First Lien Lenders receiving Restructured Debt Term Loans.

**1.105** **"Restructured Debt Term Loan Agreement Documents"** has the meaning ascribed to it in Section 6.11 hereof.

**1.106** **"Restructuring Transaction(s)"** means the transactions, if any, set forth in Section 6.12 of this Plan as to which the First Lien Agent consents, and as further described in the Restructuring Transactions Notice which is attached as Exhibit F to this Plan.

**1.107** **"Restructuring Transactions Notice"** means the notice filed with the Bankruptcy Court on or before the Exhibit Filing Date as Exhibit F to this Plan listing the restructuring Debtors and briefly describing the relevant Restructuring Transactions.

**1.108** **"Retained Actions"** means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person,

including, without limitation, Claims and Causes of Action brought prior to the Effective Date or identified in the Schedules, other than Claims explicitly released under this Plan or by a Final Order of the Bankruptcy Court.

**1.109 "Scheduled"** means, with respect to any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

**1.110 "Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors, as such schedules or statements have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.111 "Second Lien Agent"** means Wilmington Trust FSB, or any successor to the administrative agent under the Second Lien Credit Agreement.

**1.112 "Second Lien Credit Agreement"** means that certain Second Lien Credit Agreement, dated as of June 19, 2006, among Dayco Products, LLC, as borrower, Wilmington Trust FSB, as administrative agent, and the several lenders from time to time parties thereto.

**1.113 "Second Lien Lender Claims"** mean all Claims of the Second Lien Agent and the Second Lien Lenders arising under or pursuant to the Second Lien Credit Agreement. Pursuant to section 506 of the Bankruptcy Code, all Second Lien Lender Claims are Deficiency Claims.

**1.114 "Secured Tax Claim"** means a Secured Claim arising prior to the Petition Date against any of the Debtors for taxes owed to a governmental unit.

**1.115 "Security"** shall have the meaning ascribed to it in section 101(49) of the Bankruptcy Code.

**1.116 "Stockholders' Agreement"** means the stockholders' agreement, a form of which is attached as <u>Exhibit G</u>, to which any party receiving New Common Stock shall automatically be deemed a party.

**1.117 "Subsidiary Debtors"** means, collectively, Luminator Service Inc., Aerospace Sub, Inc., Armtek International Holding Company, Inc., Automatic Signal/Eagle Signal Corp., Dayco Products, LLC, F-P Displays, Inc., F-P Technologies Holding Corp., Former Fuel Systems, Inc., Luminator Holding L.P., Mark IV Holdings, LLC, Mark IV Invesco, LLC, Mark IV IVHS Holding Corp., Mark IV Pay Agent, Inc., Mark IV Transportation Technologies Holding Corp., NRD, LLC, Seebreeze Wireless Holdings, L.P., and Woods Liquidating Corporation.

**1.118 "Subsidiary Interests"** means, collectively, all of the issued and outstanding shares of stock, membership interests, other equity interests or other

instruments evidencing an ownership interest in the applicable Subsidiary Debtor as of the Effective Date, and all options, warrants and rights (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable or otherwise, to acquire shares of stock, membership interests or other equity interests in the applicable Subsidiary Debtors, as of the Effective Date.

1.119 **"Unimpaired"** refers to any Claim which is not Impaired.

1.120 **"Voting Deadline"** means [•], 2009, at [•] p.m. (Eastern time).

## C. <u>Rules of Interpretation</u>

For purposes of this Plan (a) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be in such form or on such terms and conditions, (b) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, (g) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control, and (h) to the extent this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control.

## D. <u>Computation of Time</u>

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E. <u>Exhibits</u>

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date. After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 (Attn: J. Eric Ivester, Esq. and Matthew M. Murphy, Esq.), counsel to the Debtors. In addition, imaged copies of the Exhibits will be available on the Bankruptcy Court's website, www.nysb.uscourts.gov, for a nominal charge (a PACER account is required and to obtain a PACER password, go to the PACER website, http://pacer.psc.uscourts.gov)

or at the Claims Agent's website address, http://chapter11.epiqsystems.com/markiv, free of charge. To the extent any Exhibit is inconsistent with the terms of the body of this Plan, unless otherwise ordered by the Bankruptcy Court, the terms of the relevant Exhibit shall control.

## ARTICLE II

## ADMINISTRATIVE EXPENSES
## AND PRIORITY TAX CLAIMS

**2.1** **Administrative Claims**. Subject to the provisions of Article IX of this Plan, on the first Periodic Distribution Date occurring after the later of (a) the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the Holder of such Administrative Claim, an Allowed Administrative Claimholder in these Chapter 11 Cases shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Administrative Claim, (x) Cash equal to the unpaid portion of such Allowed Administrative Claim or (y) such other treatment as to which such Debtor (or such Reorganized Debtor) and such Claimholder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto; provided further, however, that in no event shall a postpetition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business.

**2.2** **Priority Tax Claims**. With respect to each Allowed Priority Tax Claim in any Debtor's Chapter 11 Case, at the sole option of the Debtors (or the Reorganized Debtors), the Allowed Priority Tax Claimholder shall be entitled to receive on account of such Priority Tax Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Priority Tax Claim, (a) equal Cash payments made in accordance with section 1129(a)(9)(C) of the Bankruptcy Code on the last Business Day of every three (3) month period following the Effective Date, over a period not exceeding six years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance from the Effective Date calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date, (b) such

other treatment agreed to by the Allowed Priority Tax Claimholder and the Debtors (or the Reorganized Debtors), provided such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors) than the treatment set forth in subsection (a) above, or (c) payment in full in Cash on the Effective Date.

**ARTICLE III**

**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

**3.1     Introduction**.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class for purposes of voting on this Plan and of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in <u>Article II</u> herein.

This Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Therefore, the classifications set forth herein shall be deemed to apply separately with respect to each Plan proposed by each Debtor.

**3.2     Unimpaired Classes of Claims and Interests** (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan).

(a)     Class 1 – Secured Tax Claims.  Class 1 consists of all Secured Tax Claims.

(b)     Class 2 – Other Secured Claims.  Class 2 consists of all Other Secured Claims.

(c)     Class 3 – Other Priority Claims.  Class 3 consists of all Other Priority Claims.

(d)     Class 4 – Intercompany Claims.   Class 4 consists of all Intercompany Claims.

(e)     Class 5 – Subsidiary Interests.   Class 5 consists of all Subsidiary Interests (Class 5 Subsidiary Interests applies to this Plan with respect to all of the Debtors except for Mark IV).

**3.3** **Impaired Classes of Claims and Interests** (entitled to vote on this Plan).

(a) Class 6 – First Lien Lender Secured Claims. Class 6 consists of the First Lien Lender Secured Claims.

(b) Class 7 – General Unsecured Claims. Class 7 consists of the General Unsecured Claims.

(c) Class 8 – General Unsecured Convenience Claims. Class 8 consists of all General Unsecured Convenience Claims.

**3.4** **Impaired Classes of Claims and Interests** (deemed to have rejected this Plan and therefore not entitled to vote on this Plan).

(a) Class 9 – Old Equity Interests. Class 9 consists of all of the Old Equity Interests (Class 9 Old Equity Interests applies to this Plan with respect to Mark IV only).

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**4.1** **Treatment of Claims Against and Interests In the Debtors**.

(a) Class 1 (Secured Tax Claims). Except as otherwise provided in and subject to Section 8.6 herein, on the first Periodic Distribution Date occurring after the later of (i) the date a Secured Tax Claim becomes an Allowed Secured Tax Claim or (ii) the date a Secured Tax Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Secured Tax Claim, the Holder of such Class 1 Secured Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Secured Tax Claim, (x) Cash equal to the amount of such Allowed Secured Tax Claim or (y) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claimholder shall have agreed in writing, provided that such treatment is not more favorable than the treatment in clause (x) above. The Debtors' failure to object to a Secured Tax Claim in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of the Debtors or the Reorganized Debtors) when and if such Claim is sought to be enforced by the Holder of the Secured Tax Claim.

(b)     Class 2 (Other Secured Claims).  Except as otherwise provided in and subject to Section 8.6 herein, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Secured Claim becomes an Allowed Other Secured Claim or (ii) the date an Other Secured Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Other Secured Claim, the Debtors (or Reorganized Debtors) shall at the option of the Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for such Other Secured Claim, (x) pay Cash equal to the amount of such Allowed Other Secured Claim, (y) return the collateral to the secured creditor with respect to such Other Secured Claim, or (z) reinstate such Other Secured Claim in accordance with the provisions of subsection 1124 of the Bankruptcy Code.  The Debtors' failure to object to an Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of the Reorganized Debtors) when and if such Claim is sought to be enforced by the Holder of the Other Secured Claim.

(c)     Class 3 (Other Priority Claims).  Except as otherwise provided in and subject to Section 8.6 herein, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an Allowed Other Priority Claim or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Other Priority Claim, each Other Priority Claimholder shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Other Priority Claim, (x) Cash in an amount equal to the amount of such Allowed Other Priority Claim or (y) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claimholder shall have agreed upon in writing, provided that such treatment is not more favorable than the treatment in clause (x) above.  The Debtors' failure to object to an Other Priority Claim in the Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of the Debtors or the Reorganized Debtors) when and if such Claim is sought to be enforced by the Holder of the Other Priority Claim.

(d)     Class 4 (Intercompany Claims).  Intercompany Claims will, in the sole discretion of the applicable Debtor or Reorganized Debtor holding such Claim, be (i) released, waived and discharged as of the Effective Date, (ii) contributed to the capital of the obligor corporation, (iii) dividended, or (iv) remain unimpaired.

(e)     Class 5 (Subsidiary Interests).  Class 5 Subsidiary Interests shall be unaffected by this Plan, except to the extent required by the Restructuring Transactions.

(f)     Class 6 (First Lien Lender Secured Claims).  Notwithstanding any provision to the contrary herein, upon entry of the Confirmation Order, all First Lien Lender Secured Claims shall be allowed in full in the aggregate amount of $350 million and shall constitute Allowed Claims for all purposes in these Chapter 11 Cases, not subject to defense, offset, counterclaim, recoupment, reduction, subordination or recharacterization by the Debtors or any party in interest.

On the Effective Date, each Holder of an Allowed First Lien Lender Secured Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Claim, its Pro Rata share of each component of the First Lien Lenders Plan Distribution Property, with the amount of each Claimholder's Pro Rata share to be determined by the First Lien Agent as a fraction, the numerator of which is equal to the amount of such Claimholder's Allowed First Lien Lender Secured Claim, and the denominator of which is equal to the aggregate amount of all Allowed First Lien Lender Secured Claims.  Any adequate protection claims of the First Lien Lenders pursuant to the DIP Facility Order shall be deemed satisfied by the treatment of Class 6 Claims.

(g)    Class 7 (General Unsecured Claims).  Notwithstanding any provision to the contrary herein, upon entry of the Confirmation Order, all (i) First Lien Lender Deficiency Claims shall be allowed in full in the aggregate amount of $485 million, and (ii) Second Lien Lender Claims shall be allowed in full in the aggregate amount of $[•] million.  All First Lien Lender Deficiency Claims and Second Lien Lender Claims shall constitute Allowed General Unsecured Claims for all purposes in these Chapter 11 Cases, not subject to defense, offset, counterclaim, recoupment, reduction, subordination or recharacterization by the Debtors or any party in interest.

Except as otherwise provided in and subject to Section 8.6 herein, on the First Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii) the date a General Unsecured Claim becomes payable pursuant to an agreement between the Debtors (or Reorganized Debtors) and the Holder of such General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such General Unsecured Claim, its Pro Rata share of the General Unsecured Claimholders Plan Distribution Property, with the amount of each Claimholder's Pro Rata share to be determined by a fraction, the numerator of which is equal to the amount of such Claimholder's Allowed General Unsecured Claim, and the denominator of which is equal to the aggregate amount of all Allowed General Unsecured Claims.  Notwithstanding the foregoing, the New Common Stock distributions on account of the First Lien Lender Deficiency Claims and the Second Lien Lender Claims shall be made on the Effective Date.

(h)    Class 8 (General Unsecured Convenience Claims).  Except as otherwise provided in and subject to Section 8.6 herein, on the First Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim or (ii) the date a General Unsecured Convenience Claim becomes payable pursuant to any agreement between the Debtors (or Reorganized Debtors) and the Holder of such General Unsecured Convenience Claim, each Holder of an Allowed General Unsecured Convenience Claim shall receive, in full satisfaction, settlement and release of, and in exchange for, such Allowed General Unsecured Convenience Claim, Cash in an amount equal to the lesser of (a) [•]%of such Allowed General Unsecured Convenience Claim or (b) such Claimholders' Pro Rata share of $[•], with the amount of each Claimholder's Pro Rata share to be determined by a fraction, the numerator of which is equal to the amount of such Claimholder's Allowed General Unsecured Claim, and the denominator of which is equal to the aggregate amount of all Allowed General Unsecured Claims.

(i)     Class 9 (Old Equity Interests).  Old Equity Interests shall be cancelled, released, and extinguished, and Holders of such Interests shall neither receive nor retain any property on account of such Interests.

**4.2     Reservation of Rights**.  Except as otherwise explicitly provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment of Claims.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## <u>IMPAIRED CLASSES OF CLAIMS OR INTERESTS</u>

**5.1     Impaired Classes of Claims Entitled to Vote**.  Holders of Claims and Interests in each Impaired Class of Claims or Interests are entitled to vote as a Class to accept or reject this Plan, other than Classes that are deemed to reject this Plan as provided in Section 5.4 herein.  Accordingly, the votes of Holders of Claims in Class 6 First Lien Lender Secured Claims, Class 7 General Unsecured Claims, and Class 8 General Unsecured Convenience Claims shall be solicited with respect to this Plan.

**5.2     Classes Deemed to Accept Plan**.  Under section 1126(f) of the Bankruptcy Code, Holders of Claims and Interests in each Unimpaired Class of Claims or Interests are conclusively presumed to have accepted this Plan, and the votes of such Claimholders will not be solicited.  Accordingly, the votes of Holders of Claims in Class 1 Secured Tax Claims, Class 2 Other Secured Claims, Class 3 Other Priority Claims, and Class 4 Intercompany Claims, as well as votes of Holders of Class 5 Subsidiary Interests, shall not be solicited with respect to this Plan.

**5.3     Acceptance by Impaired Classes**.  Class 6 First Lien Lender Secured Claims, Class 7 General Unsecured Claims, and Class 8 General Unsecured Convenience Claims are Impaired under this Plan.  Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class has accepted this Plan if this Plan is accepted by the Holders of at least two-third ($\frac{2}{3}$) in dollar amount and more than one-half ($\frac{1}{2}$) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**5.4     Classes Deemed to Reject Plan**.  Because Holders of Interests in Class 9 Old Equity Interests are not receiving or retaining any property under this Plan on account of such Interests, they are conclusively presumed to have rejected this Plan, and the votes of such Holders will not be solicited.

**5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**. To the extent that any Impaired Class entitled to vote rejects this Plan or is deemed to have rejected it, the Debtors will request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

**5.6     Confirmability and Severability of a Plan**.  Subject to Section 13.2, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan as it applies to the Debtors or any particular Debtor.  A determination by the Bankruptcy Court that this Plan, as it applies to the Debtors or any particular Debtor, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect: (a) the confirmability of this Plan as it applies to the other Debtor(s); or (b) the Debtors' ability to modify this Plan, as it applies to the Debtors or to any particular Debtor, to satisfy the requirements of section 1129 of the Bankruptcy Code.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1     Continued Corporate Existence**.   Subject to any Restructuring Transactions contemplated by this Plan, each of the Debtors shall continue to exist as a Reorganized Debtor after the Effective Date as a separate corporate entity, with all the powers of a corporation or limited liability company, as applicable, under applicable law in the jurisdiction in which each applicable Debtor is organized and pursuant to the Organizational Documents in effect prior to the Effective Date, except to the extent such Organizational Documents are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**6.2     Corporate Action**.  Each of the matters provided for under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of any of the Debtors or the Reorganized Debtors.

**6.3     Certificate of Incorporation and Bylaws**.   The Certificate of Incorporation for Reorganized Mark IV is attached hereto as <u>Exhibit H</u> and the bylaws for Reorganized Mark IV is attached hereto as <u>Exhibit I</u>.  The Organizational Documents of each Reorganized Debtor shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, (x) a provision prohibiting the issuance of non-voting equity securities, but only to the extent

required by section 1123(a)(6) of the Bankruptcy Code, until two (2) years after the Effective Date.

**6.4     Cancellation of Existing Securities and Agreements**.    On the Effective Date, except as otherwise specifically provided for herein, (a) the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors, except such notes or other instruments evidencing indebtedness or obligations of or Interests in the Debtors that are Reinstated under this Plan, shall be cancelled, and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indenture, certificates of designation, bylaws, or certificate or articles of incorporation or similar document governing the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors or ownership interest in the Debtors, except such notes or other instruments evidencing indebtedness or obligations of or Interests in the Debtors that are Reinstated under this Plan, as the case may be, shall be released and discharged.

**6.5     Authorization and Issuance of New Common Stock**.

(a)     The Certificate of Incorporation for Reorganized Mark IV shall authorize [•] shares of New Common Stock.   On the Effective Date, Reorganized Mark IV shall (i) issue [•] shares of New Common Stock Pro Rata to the Holders of Allowed First Lien Lender Secured Claims (or their Permitted Nominees) and (ii) issue [•] shares of New Common Stock Pro Rata to Holders of General Unsecured Claims (or in the case of a First Lien Lender Deficiency Claim or Second Lien Lender Claims, such First Lien Lender's or Second Lien Lender's Permitted Nominees).  A summary description of the New Common Stock is set forth as Exhibit D.

(b)     The New Common Stock issued under this Plan shall be subject to economic and legal dilution based upon (i) the issuance of New Common Stock pursuant to, or upon the exercise of New Common Stock equivalents issued pursuant to, the Management Equity Incentive Plan as set forth in Section 6.8 of this Plan, and (ii) any other shares of New Common Stock issued after the Effective Date.

(c)     The issuance of the New Common Stock, including the shares of the New Common Stock reserved for issuance by Reorganized Mark IV in connection with the Management Equity Incentive Plan to be entered into in connection with the Restructuring Transaction is authorized without the need for any further corporate action or action by any other party.

(d)     All of the shares of New Common Stock issued pursuant to this Plan shall be duly authorized, validly issued, fully paid and non-assessable.

(e)     The New Common Stock issued hereunder shall be subject to the terms of the Stockholders' Agreement and a Registration Rights Agreement, and the holders thereof shall automatically be deemed a party thereto as of the Effective Date.

**6.6     Directors and Officers**.

(a)     The existing officers of the Debtors shall remain in their current capacities as officers of the Reorganized Debtors, subject to the ordinary rights and powers of the board of directors to remove or replace them in accordance with the terms of the Organizational Documents and any applicable employment agreements.

(b)     On the Effective Date, the term of the current members of the board of directors of Mark IV shall expire.  The initial board of directors of Reorganized Mark IV shall consist of five (5) directors.  The First Lien Lenders shall designate four (4) directors (including the Chairman).  Subject to the consent of the First Lien Lenders (such consent not to be unreasonably withheld), the remaining director shall be a senior executive officer of Mark IV in place immediately prior to the Effective Date.  Thereafter, the board of directors of Reorganized Mark IV will be elected in accordance with the Stockholders' Agreement and the Organizational Documents of Reorganized Mark IV.

(c)     The Debtors shall file on or before the Exhibit Filing Date a notice of the identities of the members of the board of directors of Reorganized Mark IV to serve as of the Effective Date.  The existing directors of each Subsidiary Debtor shall remain in their current capacities as directors of the applicable Reorganized Subsidiary Debtor until replaced or removed in accordance with the Organizational Documents of the applicable Reorganized Subsidiary Debtor.

(d)     Other provisions governing the service, term and continuance in office of the members of the board shall be as set forth in the Organizational Documents of the Reorganized Debtors.

**6.7     Employment, Retirement, Indemnification and Other Agreements and Incentive Compensation Programs**.

(a)     The proposed terms of employment agreements for certain key employees of the Reorganized Debtors, to be effective on the Effective Date, are summarized in Exhibit J attached hereto (the "Executive Employment Agreements"). The Executive Employment Agreements shall be in form and substance reasonably satisfactory to the First Lien Agent.

(b)     With the exception of those individuals (i) whose employment terms are summarized in Exhibit J, and (ii) the terms of whose employment

agreements are subject to a rejection motion as of the Confirmation Hearing, to the extent that any of the Debtors has in place as of the Effective Date employment, severance (change in control), retirement, indemnification and other agreements with their respective active directors, officers, managing members and employees who will continue in such capacities or a similar capacity after the Effective Date, or retirement income plans, welfare benefit plans and other plans for such Persons, such agreements, programs and plans will remain in place after the Effective Date, and the Reorganized Debtors will continue to honor such agreements, programs and plans except to the extent provided herein without prejudice to the Reorganized Debtors' authority to modify or eliminate any such agreements, programs or plans as permitted under applicable non-bankruptcy law. Benefits provided under such agreements or plans may include benefits under qualified and non-qualified retirement plans; health and dental coverage; short and long-term disability benefits; death and supplemental accidental death benefits; vacation; leased car; financial consulting, tax preparation and estate planning as well as an annual physical examination, each paid or provided commensurate with an employee's position in accordance with the applicable Reorganized Debtor's policies then in effect. Such agreements and plans also may include equity, bonus and other incentive plans in which officers, managing members and other employees of the Reorganized Debtors may be eligible to participate; provided, however, such equity, bonus and other incentive plans shall not provide for the issuance of New Common Stock and to the extent that such equity, bonus and other incentive plan provides for the issuance of Existing Securities, such provision shall be deemed null and void and the officers, managing members and other employees shall waive any right to enforce such provisions; provided, further, however, that pursuant to the Management Equity Incentive Plan, there shall be reserved for certain members of management, directors, and other employees of the Reorganized Debtors a certain number of shares of New Common Stock and other securities all as more fully described herein.

(c)     Notwithstanding anything to the contrary herein, following the Effective Date of the Plan, with respect to the payment of "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code) related to medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death, such payment shall continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation this Plan, for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual rights to terminate or modify.

(d)     Notwithstanding anything contained herein to the contrary, the terms of the KEIP shall not be modified, altered, or amended. Those certain incentive payments provided for in the KEIP shall be paid in the amounts and at such times as contemplated by the KEIP.

**6.8     Implementation of the Management Equity Incentive Program**.  A summary of the Management Equity Incentive Plan is attached hereto as <u>Exhibit C</u>. On the Effective Date, the Reorganized Debtors shall implement the Management Equity Incentive Plan in order to promote the operation of the Reorganized Debtors by offering incentives to key employees who are primarily responsible for the growth and prosperity of the Reorganized Debtors, and to attract and retain qualified employees and thereby benefit the shareholders of the Reorganized Debtors based on the performance of the Reorganized Debtors.  Pursuant to the Management Equity Incentive Plan, the Reorganized Debtors shall deliver certain stock options to certain members of management and other employees as of and after the Effective Date, in such amounts and pursuant to such terms as set forth in the Management Equity Incentive Plan.  Payments to eligible employees under the Management Equity Incentive Program shall include all earned and due incentive payments, including, without limitation, payments due under the KEIP.

The Management Equity Incentive Plan will be administered by Reorganized Mark IV's board of directors.  In applying and interpreting the provisions of the Management Equity Incentive Plan, the decisions of Reorganized Mark IV's board of directors shall be final.

**6.9     Issuance of the New Common Stock**.   On the Effective Date, Reorganized Mark IV shall issue the New Common Stock in accordance with the terms of the Plan.  The issuance of the New Common Stock and the distribution thereof shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

**6.10    The Exit Facility**.  On the Effective Date, the Reorganized Debtors shall (a) enter into the Exit Facility together with all guarantees evidencing obligations of the Reorganized Debtors thereunder and security documents, (b) execute mortgages, certificates and other documentation and deliveries as the agent under the Exit Facility reasonably requests, and (c) deliver insurance and customary opinions (collectively, the documents in (a) – (c), the "<u>Exit Facility Documents</u>"), all of which such Exit Facility Documents shall be in form and substance satisfactory to the Exit Facility Lenders, and such documents and all other documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date.  In the Confirmation Order, the Bankruptcy Court shall approve the Exit Facility in substantially the form filed with the Bankruptcy Court and authorize the Reorganized Debtors to execute the same together with such other documents as the Exit Facility Lenders may reasonably require in order to effectuate the treatment afforded to such parties under the Exit Facility.

**6.11    The Restructured Debt Term Loan Agreement**.  On the Effective Date, the Reorganized Debtors shall (a) enter into the Restructured Debt Term Loan

Agreement together with all guarantees evidencing obligations of the Reorganized Debtors thereunder and security documents, (b) execute mortgages, certificates and other documentation and deliveries as the agent under the Restructured Debt Term Loan Agreement reasonably requests, and (c) deliver insurance and customary opinions (collectively, the documents in (a) – (c), the "Restructured Debt Term Loan Agreement Documents"), all of which such Restructured Debt Term Loan Agreement Documents shall be in form and substance satisfactory to the First Lien Agent, and such documents and all other documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date. In the Confirmation Order, the Bankruptcy Court shall approve the Restructured Debt Term Loan Agreement in substantially the form filed with the Bankruptcy Court and authorize the Reorganized Debtors to execute the same together with such other documents as the First Lien Agent may reasonably require in order to effectuate the treatment afforded to such parties under the Restructured Debt Term Loan Agreement. Further, on the Effective Date, the Restructured Debt Term Loan Agreement shall become effective and govern the original amount of $225 million of term loans deemed made by the DIP Lenders, in the case of the Deferred Commitment Fee Claims, and by the First Lien Lenders, in the case of the First Lien Lender Secured Claim. The Restructured Debt Term Loan shall be comprised of the following: (a) to the extent not paid with proceeds of the Exit Facility, the DIP Lenders shall be deemed to have made term loans in an aggregate amount equal to the Deferred Commitment Fee Claims, secured by a second lien on all assets granted to secure the Exit Facility; (b) up to $200 million of term loans to be allocated between the U.S. and Europe deemed made by the First Lien Lenders, with such $200 million to be reduced dollar for dollar by the amount of any term loans deemed made in satisfaction of the Deferred Commitment Fee Claims, and such term loans to be secured by a third lien on all assets granted to secure the Exit Facility; and (c) $25 million of pay-in-kind term loans deemed made by the First Lien Lenders, to be secured by a third lien on all assets granted to secure the Exit Facility, in each case as set forth in Exhibits B and K. On the Effective Date, each First Lien Lender shall automatically be deemed a party to the Restructured Debt Term Loan Agreement.

**6.12 Restructuring Transactions and Alternative Structures**. The Debtors or the Reorganized Debtors, as the case may be, shall take such actions as may be necessary or appropriate to effect the relevant Restructuring Transactions. Such actions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate Organizational Documents with the appropriate governmental authorities under applicable law; and (d) all other actions that such Debtor or Reorganized Debtor determines are necessary

or appropriate, including the making of filings or recordings in connection with the relevant Restructuring Transaction. In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized Debtor shall assume and perform the obligations under this Plan of each Reorganized Debtor party to such merger. In the event a Reorganized Debtor is liquidated, the Reorganized Debtors (or the Reorganized Debtor which owned the stock of such liquidating Debtor prior to such liquidation) shall assume and perform the obligations of such liquidating Reorganized Debtor under this Plan.

**6.13    Preservation of Causes of Action**. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors shall retain and may, in their sole discretion, enforce or prosecute all Retained Actions, a nonexclusive list of which is attached hereto as Exhibit L. The Reorganized Debtors, in their sole and absolute discretion, will determine whether to bring, settle, release, compromise, or enforce such rights (or decline to do any of the foregoing). The Reorganized Debtors or any successors may prosecute (or decline to prosecute) such Retained Actions in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action. Except as otherwise provided herein, the failure of the Debtors to specifically list any Claim, right of action, suit or proceeding in the Schedules or in Exhibit L does not, and will not be deemed to, constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits or proceedings in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit or proceeding upon or after the confirmation or consummation of this Plan.

**6.14    Exclusivity Period**. Subject to Section 13.2, the Debtors shall retain the exclusive right to amend or modify this Plan, and to solicit acceptances of any amendments to or modifications of this Plan, through and until the Effective Date; provided that, the First Lien Agent consents to any material amendment or modification of this Plan, such consent not to be unreasonably withheld.

**6.15    Effectuating Documents; Further Transactions**. The Chief Financial Officer, or any other executive officer or managing member of the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Secretary or Assistant Secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

**6.16    Exemption From Certain Transfer Taxes and Recording Fees**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan (including, without limitation, pursuant to any grant of collateral under the Reorganized Debtors' Credit Facilities), or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property, will not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VII

## <u>UNEXPIRED LEASES AND EXECUTORY CONTRACTS</u>

**7.1    Assumed Contracts and Leases**.  On the Effective Date, all executory contracts or unexpired leases of the Debtors (except those executory contracts and unexpired leases to which the Debtors are a party that are specifically listed on the schedule of rejected contracts and leases annexed hereto as <u>Exhibit M</u>) will deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions, pursuant to section 365(b)(1) of the Bankruptcy Code and, to the extent applicable, section 365(b)(3) of the Bankruptcy Code, as of the Effective Date.  Each executory contract and unexpired lease assumed pursuant to this Article VII shall be Reinstated and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, without amendment or modification.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, and any other interests in real estate or rights <u>in rem</u> related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as a part of this Plan.

**7.2    Rejected Contracts and Leases**.  Except with respect to executory contracts and unexpired leases that have previously been assumed or are the subject of a motion to assume, or a notice of assumption served pursuant to an order of the Bankruptcy Court, on or before the Confirmation Date, all executory contracts and unexpired leases listed on <u>Exhibit M</u> to this Plan shall be deemed automatically rejected as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code. The Debtors reserve the right to file a motion on or before the Confirmation Date to reject any executory contract or unexpired lease.

**7.3    Exhibits Not Admissions**.  Neither the inclusion by the Debtors of a contract or lease on <u>Exhibit M</u> nor anything contained in this Plan shall constitute an admission by the Debtors that such lease or contract is an unexpired lease or executory contract or that any Debtor, or any of their Affiliates, has any liability thereunder.

**7.4    Payments Related to Assumption of Executory Contracts and Unexpired Leases**.  The provisions (if any) of each executory contract or unexpired lease to be assumed under this Plan which are or may be in default shall be satisfied solely by Cure.  Any person claiming that a monetary cure amount is due in connection with the assumption of any executory contract or unexpired lease as contemplated by section 365(b) of the Bankruptcy Code must file a monetary cure claim with the Bankruptcy Court asserting all alleged amounts accrued through the Effective Date, if any (the "<u>Cure Claim</u>"), no later than thirty (30) days after the Effective Date (the "<u>Cure Claim Submission Deadline</u>").  Any party failing to submit a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting, or seeking to collect any amounts relating thereto against the Debtors or Reorganized Debtors.  In the case of a Cure Claim related to an unexpired lease of non-residential real property, such Cure Claim must include a breakdown by category of all amounts claimed, including, but not limited to, amounts for real estate taxes, common area maintenance, and rent.  The Debtors shall have thirty (30) days from the Cure Claims Submission Deadline or the date a Cure Claim is actually filed, whichever is later, to file an objection to the Cure Claim.  Any disputed Cure Claims shall be resolved either consensually by the parties or by the Bankruptcy Court.  Disputed Cure Claims shall be set for status at subsequent hearings following the Cure Claim Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy Court as needed.  If the Debtors do not dispute a Cure Claim, then the Debtors shall pay the Cure Claim, if any, to the claimant within twenty (20) days of the Cure Claim Submission Deadline.  Disputed Cure Claims that are resolved by agreement or Final Order of the Bankruptcy Court shall be paid by the Debtors within twenty (20) days of such agreement or Final Order of the Bankruptcy Court.

**7.5    Rejection Damages Bar Date**. If rejection of an executory contract or unexpired lease rejected pursuant to this Plan results in a Claim, then such Claim

shall be forever barred and shall not be enforceable against either the Debtors or the Reorganized Debtors or such entities' properties unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected. Any Claim that may be Allowed as a result of the rejection of an executory contract or unexpired lease shall be treated as a General Unsecured Claim.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1     Time of Distributions**.  Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under this Plan shall be made on a Periodic Distribution Date.

**8.2     No Interest on Claims**.  Unless otherwise specifically provided for in this Plan, or the Confirmation Order, interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim, right, or Interest.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**8.3     Disbursing Agent**.  The Disbursing Agent shall make all distributions required under this Plan.

**8.4     Claims Administration Responsibility**.  The Reorganized Debtors will have sole and absolute discretion in administering, disputing, objecting to, compromising or otherwise resolving all Claims against the Debtors (the "Claims Administration").  The Reorganized Debtors shall bear the responsibility for any fees, costs, expenses or other liabilities incurred by the Reorganized Debtors in connection with the Claims Administration.

**8.5     Delivery of Distributions**.  Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the proofs of claim filed by such Holders of Claims (or the last known addresses of such Holders of Claims if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, or (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not received a written notice of a change in address.  Distributions under this Plan to Holders of DIP Facility Claims shall be made to or at the direction of the DIP Agent

and shall be distributed by the DIP Agent in accordance with the DIP Facility. Distributions under this Plan to Holders of First Lien Lender Claims shall be made to or at the direction of the First Lien Agent and shall be distributed in accordance with the First Lien Credit Agreement and this Plan. Distributions under this Plan to Holders of Allowed Second Lien Lender Claims shall be made to or at the direction of the Second Lien Agent and shall be distributed by the Second Lien Agent in accordance with the Second Lien Credit Agreement. Distributions under this Plan to all other Allowed Claimholders shall be made by the Disbursing Agent. If any Claimholder's distribution is returned as undeliverable, no further distributions to such Claimholder shall be made unless and until the Disbursing Agent is notified of such Claimholder's then current address, at which time all missed distributions shall be made to such Claimholder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. All claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall revert to the Reorganized Debtors. Upon such reversion, the claim of any Claimholder, or their successors, with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

**8.6 Procedures for Treating and Resolving Disputed and Contingent Claims**.

(a) *No Distributions Pending Allowance.* No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed on or before the Claims Objection Deadline.

(b) *Distributions After Allowance.* Payments and distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with provisions of this Plan that govern distributions to such Claimholders. Subject to Section 8.2 hereof, on the first Periodic Distribution Date following the date when a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will distribute to the Claimholder any Cash that would have been distributed on the dates distributions were previously made to Claimholders had such Allowed Claim been an Allowed Claim on such dates, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claimholders included in the applicable class.

# ARTICLE IX

## ALLOWANCE AND PAYMENT OF
## CERTAIN ADMINISTRATIVE CLAIMS

**9.1      DIP Facility Claims**.  On the Effective Date, DIP Facility Claims shall be paid in full in Cash, except that Deferred Commitment Fee Claims shall be satisfied pursuant to section 9.2 hereof.

**9.2      Deferred Commitment Fee Claims**.  On the Effective Date, all Deferred Commitment Fee Claims shall either (a) be paid in full in Cash or (b) satisfied by the deemed making of Restructured Debt Term Loans under the Restructured Debt Term Loan Agreement.

**9.3      Professional Claims**.

(a)      *Final Fee Applications.*  All final requests for payment of Professional Claims must be filed no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

(b)      *Payment of Interim Amounts.*  Subject to the Holdback Amount, on the Effective Date, the Debtors or the Reorganized Debtors shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date.  In order to receive payment on the Effective Date for unbilled fees and expenses incurred through such date, no later than two (2) days prior to the Effective Date, the Professionals shall estimate fees and expenses due for periods that have not been billed as of the Effective Date and shall deliver such estimate to counsel for the Debtors.  Within fifteen (15) days after the Effective Date, a Professional receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order.

(c)      On the Effective Date, the Debtors or the Reorganized Debtors shall pay to the Disbursing Agent, in order to fund the Holdback Escrow Account, Cash equal to the aggregate Holdback Amount for all Professionals.  The Disbursing Agent shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order.  Such funds shall not be considered property of the Reorganized Debtors.  The remaining amount of Professional Claims owing to the Professionals shall be paid to such Professionals by the Disbursing Agent from the Holdback Escrow Account when such claims are finally allowed by the Bankruptcy Court.  When all Professional Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.

(d)     Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate.

**9.4     Substantial Contribution Compensation and Expenses Bar Date**. Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court, and serve such application on counsel for the Debtors and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before a date which is forty-five (45) days after the Effective Date, or be forever barred from seeking such compensation or expense reimbursement.

**9.5     Other Administrative Claims**.  All other requests for payment of an Administrative Claim (other than as set forth in Sections 9.3 and 9.4 of this Plan, and other than with respect to Cure Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtors no later than thirty (30) days after the Effective Date.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim (a) which is paid or payable by any Debtor in the ordinary course of business or (b) the payment of which has been approved by the Bankruptcy Court.

## ARTICLE X

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**10.1     Revesting of Assets**.  Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Estates (including Retained Actions) shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, Liens and Interests of creditors and equity security Holders (other than as expressly provided herein).  As of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

**10.2     Discharge of the Debtors**. Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, except as otherwise

specifically provided in this Plan or in the Confirmation Order, confirmation of this Plan discharges and releases, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), the Debtors, the Reorganized Debtors and the Estates (a) from all Claims and Causes of Action, whether known or unknown, and (b) from liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, in each case regardless of whether any property has been distributed or retained pursuant to this Plan on account of such Claims, Causes of Action, rights, liabilities, liens, obligations and Interests, and in each case including, but not limited to, demands and (x) Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests that arose before the Confirmation Date, (y) any Claims, Causes of Actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests to the extent such Claims, Causes of Actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and (z) all Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (i) a proof of claim or interest based upon such Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests is allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim, Cause of Action, right, liability, lien, obligation or Interests accepted this Plan.  The Confirmation Order shall be a judicial determination of the discharge of all liabilities of and Interests in the Debtors, subject to the Effective Date occurring.

As of the Confirmation Date, except as provided in this Plan or in the Confirmation Order or under the terms of the documents evidencing and orders approving the Reorganized Debtors' Credit Facilities all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests in Mark IV, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

**10.3    Compromises and Settlements**.    Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various Claims (a) against them and (b) that they have against other Persons.  The Debtors expressly reserve the right

(with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors as contemplated in Section 10.1 of this Plan, without any need for Bankruptcy Court approval.

**10.4    Release of Certain Parties**.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors and any Person seeking to exercise the rights of the Estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities which the Debtors or the Estates are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, this Plan or the Reorganized Debtors with respect to each of the Released Parties. Notwithstanding anything to the contrary contained herein, nothing in this Plan shall be deemed to release any of the Debtors, or any of their Affiliates from their obligations under this Plan, the Reorganized Debtors' Credit Facilities, and the transactions contemplated hereby and thereby.

**10.5    Releases by Holders of Claims.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim that affirmatively votes in favor of this Plan hereby forever releases, waives, and discharges all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities, whatsoever against the Released Parties, arising under or in connection with or related to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, this Plan (other than the rights under this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder) or the Reorganized Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, this Plan or the Reorganized Debtors.**

**10.6    Setoffs**.  Except with respect to Claims specifically Allowed under the Plan, including the First Lien Lender Secured Claims, the First Lien Lender

Deficiency Claims and the Second Lien Lender Claims, the Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such Claimholder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Claimholder.

**10.7    Exculpation and Limitation of Liability**.   Except as otherwise specifically provided in this Plan, the Released Parties shall not have or incur, and are hereby released from, any claim, obligation, right, Cause of Action and liability to one another or to any Claimholder or Interestholder, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, investment bankers, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (a) the filing and prosecution of the Chapter 11 Cases, (b) the Reorganized Debtors' Credit Facilities and the documents related thereto, (c) the negotiation and filing of this Plan, (d) the pursuit of confirmation of this Plan, (e) the negotiation and pursuit of approval of the Disclosure Statement, (f) the consummation of this Plan, and (g) the administration of this Plan or the property to be distributed under this Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  Notwithstanding anything to the contrary contained herein, this Section 10.7 shall not release any party from any claim, obligation, right, Cause of Action or liability arising from any act or omission committed in bad faith, gross negligence or willful misconduct.

**10.8    Indemnification Obligations**.   Except as specifically provided in Sections 6.4 and 6.7 of this Plan, in satisfaction and compromise of the Indemnitees' Indemnification Rights: (a) all Indemnification Rights except those held by Persons included in either the definition of "Insured Persons" or the "Insureds" in any of the policies providing the D&O Insurance shall be released and discharged on and as of the Effective Date; provided that the Indemnification Rights excepted from the release and discharge shall remain in full force and effect on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Chapter 11 Cases; (b) the Debtors or Reorganized Debtors, as the case may be, covenant to use commercially reasonable efforts to purchase and maintain D&O Insurance providing coverage for those Persons described in subsection (a)(i) of this Section 10.8 whose Indemnification Rights are not being released and discharged on and as of the Effective Date, for a period of five years after the Effective Date insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for, or on behalf of the Debtors or the Reorganized Debtors in at least the scope and amount as currently maintained by the Debtors (the "Insurance Coverage"); and (c) the Debtors or the Reorganized Debtors, as the case may be,

hereby indemnify such Persons referred to in subclause (b) above to the extent of, and agree to pay for, any deductible or retention amount that may be payable in connection with any claim covered by either under the foregoing Insurance Coverage or any prior similar policy.

**10.9     Injunction.  The satisfaction, release, and discharge pursuant to this _Article X_ of this Plan shall also act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.**

## ARTICLE XI

### CONDITIONS PRECEDENT

**11.1     Conditions to Confirmation**.  The following are conditions precedent to confirmation of this Plan that must be satisfied unless waived in accordance with Section 11.3 of this Plan:

(a)     The Bankruptcy Court shall have approved a disclosure statement with respect to this Plan in form and substance reasonably satisfactory to the Debtors and the First Lien Agent.

(b)     The Confirmation Order, this Plan, and all exhibits and annexes to each of this Plan and the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors and the First Lien Agent.

(c)     The First Lien Agent shall be satisfied that the restructuring of Mark IV Industries Corp. and Dayco Europe S.r.l. shall be completed on terms satisfactory to the First Lien Agent on or before the Effective Date.

**11.2     Conditions to Consummation**.   The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied unless waived in accordance with Section 11.3 of this Plan:

(a)     The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the rejection of unexpired leases and executory contracts by the Debtors as contemplated by Section 7.2 hereof.

(b)     The Debtors shall have entered into the Reorganized Debtors' Credit Facilities and all conditions precedent to the consummation thereof shall have

been waived (subject to any applicable consent requirements) or satisfied in accordance with the terms thereof.

(c)     The Confirmation Order, with the Plan and all exhibits and annexes to each, in form and substance reasonably satisfactory to the Debtors and the First Lien Lenders, shall have been entered by the Bankruptcy Court on or before [•], 2009, and shall be a Final Order.

(d)     All actions, documents and agreements necessary to implement this Plan shall be in form and substance reasonably satisfactory to the Debtors and the First Lien Lenders and shall have been effected or executed as applicable.

(e)     The Debtors shall have reduced their post Effective Date obligations in respect of the Legacy Liabilities to an amount reasonably satisfactory to the First Lien Lenders.

**11.3    Waiver of Conditions to Confirmation or Consummation**.  The conditions set forth in Sections 11.1 (other than 11.1(a)) and 11.2 (other than 11.2(b) and (c)) of this Plan may be waived by the Debtors subject to such waiver being reasonably satisfactory to the First Lien Agent, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

## ARTICLE XII

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan (except in the case of the Restructured Debt Term Loans, the Exit Facility and the New Common Stock, and [•], which shall be subject to the jurisdiction indicated in the definitive documentation thereof), including, among others, the following matters:

(a)     to hear and determine pending motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid;

(b)     to adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

(c) to adjudicate any and all disputes arising from the distribution of the New Common Stock;

(d) to ensure that distributions to Allowed Claimholders are accomplished as provided herein;

(e) to hear and determine any and all objections to the allowance of Claims and the estimation of Claims, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow or disallow any Claim, in whole or in part;

(f) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g) to issue orders in aid of execution, implementation, or consummation of this Plan;

(h) to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of Professional Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(j) to determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with this Plan; provided, however, that any dispute arising under or in connection with the Reorganized Debtors' Credit Facilities, the Registration Rights Agreement and the Stockholders' Agreement shall be dealt with in accordance with the provisions thereof.

(l) to hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of its Estates, wherever located;

(m) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) to hear any other matter not inconsistent with the Bankruptcy Code;

(o)     to hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(p)     to hear and determine all disputes involving the releases and exculpations granted herein and the injunctions established herein;

(q)     to enter a final decree closing the Chapter 11 Cases; and

(r)     to enforce all orders previously entered by the Bankruptcy Court.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests, and the Retained Actions and any motions to compromise or settle such disputes.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**13.1     Binding Effect**.  As of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Claimholders, all present and former Interestholders, other parties-in-interest and their respective heirs, successors, and assigns.

**13.2     Modification and Amendments**.  The Debtors may alter, amend, or modify this Plan or any Exhibits hereto under section 1127(a) of the Bankruptcy Code, in a form that is reasonably satisfactory to the First Lien Agent, at any time prior to the Confirmation Hearing.   After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

**13.3     Withholding and Reporting Requirements**.  In connection with this Plan and all instruments issued in connection therewith and distributions thereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**13.4    Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, for United States federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**13.5    Creditors' Committee**.    Effective on the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Professional Claims.  The professionals retained by the Creditors' Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with (a) the implementation of the transactions contemplated to occur on the Effective Date hereunder and (b) applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 9.3 hereof.

**13.6    Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation hearing, shall be paid on the Effective Date.  The Reorganized Debtors will continue to pay fees pursuant to section 1930 of title 28 of the United States Code as required by that section.

**13.7    Revocation, Withdrawal, or Non-Consummation**.

(a)    *Right to Revoke or Withdraw.*  Each Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date.

(b)    *Effect of Withdrawal, Revocation, or Non-Consummation.*  If the Debtors revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement, or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

**13.8    Notices**.  Any notice required or permitted to be provided to the Debtors, the Creditors' Committee, the First Lien Agent or the DIP Agent under this

Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtors:

MARK IV INDUSTRIES, INC.
One Towne Centre
501 John James Audubon Parkway
Amherst, New York 14226
Attn:   Chief Financial Officer

with copies to:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Wacker Drive, Suite 2700
Chicago, Illinois  60606-1720
Attn:   J. Eric Ivester, Esq. and Matthew M. Murphy, Esq.

If to the Creditors' Committee:

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169
Attn:   Scott L. Hazan, Esq.

If to the First Lien Agent or DIP Agent:

JPMORGAN CHASE BANK, N.A.
277 Park Avenue, 8th Floor
New York, New York 10017
Attn:   Marina Flindell

with copies to:

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue, 27th Floor
New York, New York 10017
Attn:   Steven M. Fuhrman, Esq.

**13.9**      **Term of Injunctions or Stays**.  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**13.10  Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein or in the relevant governing agreement, document or instrument, the laws of the State of New York shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan.

**13.11  Waiver and Estoppel**.  Each Claimholder or Interestholder shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other Person, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: New York, New York
June 17, 2009

MARK IV INDUSTRIES, INC. AND ITS
AFFILIATES AND SUBSIDIARIES THAT ARE ALSO
DEBTORS AND DEBTORS-IN-POSSESSION IN THE
CHAPTER 11 CASES

By:  /s/ Mark G. Barberio
     Mark G. Barberio
     Vice President and Chief Financial Officer of
     Mark IV Industries, Inc.

J. Eric Ivester

Matthew M. Murphy

SKADDEN ARPS SLATE MEAGHER
   & FLOM LLP

155 N. Wacker Drive, Suite 2700

Chicago, Illinois  60606-1720

Telephone: (312) 407-0700

Facsimile: (312) 407-0411

Jay M. Goffman

SKADDEN ARPS SLATE MEAGHER
   & FLOM LLP

Four Times Square

New York, New York 10036-6522

Telephone: (212) 735-3000

Facsimile: (212) 735-2000

ATTORNEYS FOR MARK IV INDUSTRIES, INC.
CORPORATION AND ITS SUBSIDIARIES AND
AFFILIATES THAT ARE ALSO DEBTORS AND
DEBTORS-IN-POSSESSION IN THE CHAPTER 11
CASES